UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carolyn Eckerson, Chelsea Frederickson,
Cheryl Gough, Kathy Iverson, Julie Morgan,
Tina Tindall and Peggy Wilson,

      Plaintiffs,

v.                                              MEMORANDUM OPINION
                                                 AND ORDER
                                                 Civil No. 07-984 (MJD/AJB)

Donald Blowers, in his official
and individual capacity, and
Allina Health System d/b/a
Allina Hospitals & Clinics and
Allina Medical Clinic-Woodlake,

      Defendants.

_____

      Sandra K. Kensy, Esq., for and on behalf of Plaintiff.

      Paul J. Zech and Sara G. McGrane, Felhaber, Larson, Fenlon & Vogt, P.A. for and on behalf of Defendants Allina Health System, d/b/a Allina Hospitals & Clinics and Allina Medical Clinic-Woodlake.

_____

      This matter is before the Court on Defendants Allina Health System, d/b/a Allina Hospitals & Clinics and Allina Medical Clinic-Woodlake's (collectively "Allina") motion to enforce the separation and release agreement executed by Plaintiff Tina Tindall ("Tindall"), and to dismiss Tindall's claims.

1

Allina asserts that on February 16, 2006, Tindall executed a Separation Agreement and Release ("Release") wherein she agreed "to settle and resolve all claims [she] may have against Allina Health System, as well as any claims relating in any way to [her] recruitment, hiring, employment or separation from employment with Allina Health System."  Allina Ex. A.  Despite entering into the Release, Tindall filed the instant action alleging claims of race discrimination, sexual harassment and reprisal pursuant to the MHRA and Title VII, as well as a number of common law claims.

Applying Minnesota contract law to the Release, Allina asserts the Release is a binding and enforceable contract.  In response, Tindall filed an affidavit in which she states that she did not execute the Release and that her signature was forged.  Tindall Affidavit, ¶ 3.  She further states that her attorney, Dean Margolis, had previously been suspended from the practice of law for forging his client's signature.  Id. ¶ 4.  She asserts that she had a worker's compensation claim pending for over six years, and that in February 2006, Allina offered a lump sum settlement of the claim together with lifetime medical coverage.  Id.  Tindall asserts that she reviewed a document entitled Stipulation for Settlement with her attorney.  Id., Ex. A.  She states she did initial the questions on pages 11 and 12,

but did not sign the Stipulation until March 8, 2006. Id. ¶ 5.

She claims that upon receipt of the instant motion, she obtained the opinion of an expert forensic document examiner. Id., Ex. C. The expert, Barbara Downer, opined that the signatures of Tindall appearing on pages 4 and 6 of the Separation and Release Agreement copies marked "Original" and "Copy" are not genuine and were placed on this document by an unknown method of tracing. Id. p. 3.

Allina asserts that initially, Tindall had retained the services of Karen Runyon, a forensic document examiner, to examine her signatures on the Release. Ms. Runyon examined the original Release, and compared it to known writing samples of Tindall. Based on this examination, Ms. Runyon opined that the signatures on the Release were genuine and that there was no sign of tracing, simulation or manipulation. Gullickson Aff., Ex. A. By contrast, Ms. Downer did not examine the original Release. Rather, she examined only copies. In fact, she noted in her opinion that tracing could "only be conclusively determined by an examination of the originals." Gullickson Aff., Ex. B., p. 2, ¶ 9. Accordingly, Allina asserts that Ms. Downer's opinion should be excluded as not meeting the requirements of Daubert. In support, Allina has submitted numerous

publications that consistently provide that either an original or first generation copy should be used for comparison. Id. Ex. E - I. Ms. Downer agrees the original or a first generation copy should be used. Id. Ex. F. See also Id. Ex. C., Downer Dep. p. 28.

> Rule 702 of the Federal Rules of Evidence provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court set forth the standard for the admission of scientific expert testimony, noting the Rule 702 places emphasis on reliability and relevance. Thus, when faced with a proffer of scientific expert testimony, the court must engage in "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-593.

The Court then provided some general observations for the lower courts to consider in making determinations as to whether the scientific knowledge is relevant and reliable, such as whether it has been tested, subjected to peer review and publication, what is the known or potential rate of error, and whether it is generally accepted.  Id. at 593-595.  "The inquiry envisioned by Rule 702 is, we emphasize, a flexible one.  Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission.  The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."  Id.  In its role as gatekeeper, the court should also keep in mind that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 596.

In this case, Allina is not challenging Ms. Downer's qualifications as a forensic document examiner, nor the methods that she employs to reach her conclusions.  Instead, Allina challenges the factual basis for Ms. Downer's conclusion.  Generally, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility".  Bonner v. ISP Techs., Inc., 259

F.3d 924, 929 (8th Cir. 2001).  Accordingly, Allina's request to exclude Ms. Downer's testimony will be denied.

Allina argues that even if the Court were to find Ms. Downer's opinion admissible, such evidence is not sufficient to show by clear and convincing evidence that Tindall's signature was forged on the Release.  Given the fact that the discovery deadline has not yet passed in this case, the Court finds Allina's motion is premature.  Tindall still has the opportunity to present the original Release documents to her expert, or to turn over any other evidence to support her claim that her signature was forged.

IT IS HEREBY ORDERED that Allina's Motion to Enforce the Separation Agreement and Release is DENIED WITHOUT PREJUDICE.

Date: January 11, 2008

s / Michael J. Davis<br>
Michael J. Davis<br>
United States District Court